IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL LAW CENTER ON HOMELESSNESS & POVERTY, <br>    2000 M Street NW, Suite 210 <br>    Washington, DC 20036, <br><br>             Plaintiff, <br><br>      v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br>    451 7th Street SW <br>    Washington, DC 20410, <br><br>             Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 18-998 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, arises from a FOIA request to the U.S. Department of Housing and Urban Development (HUD).

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

3. Plaintiff National Law Center on Homelessness & Poverty (NLCHP) is a national nonprofit dedicated to ending and preventing homelessness. Established in 1989, NLCHP operates programs across the country to serve homeless families, children, and individuals. NLCHP focuses on expanding access to affordable housing, meeting the immediate and long-term needs of those who are homeless or at risk of homelessness, and strengthening the social safety-net through policy advocacy, public education, impact litigation, and advocacy training and support. Its website

1

includes resources regarding important topics related to homelessness, including the criminalization of homelessness, and its monthly newsletter reaches government officials, advocates, and service providers in all fifty states and the District of Columbia.

4. Defendant U.S. Department of Housing and Urban Development (HUD) is an agency of the United States and has possession of and control over the records that NLCHP seeks.

**FACTS**

5. On or about May 8, 2017, NLCHP mailed a FOIA request (May 8 Request) to HUD for three sets of documents related to applications for the Continuum of Care Program, a HUD grant program that funds certain services for homeless and formerly homeless families and individuals. The program is carried out through coalitions of city and county agencies and local nonprofit service providers called continuums of care (CoCs), which have planning, coordination, and other responsibilities related to the grant program and its operation within their communities.

6. Specifically, NLCHP requested:

   a. All responses by funding applicants to a certain section of Community Planning and Development's Notice of Funding Availability for the 2015 Continuum of Care Program competition;

   b. All responses by funding applicants to a certain section of Community Planning and Development's Notice of Funding Availability for the 2016 Continuum of Care Program competition; and

   c. The points awarded by HUD to each applicant's corresponding responses to the identified sections of the relevant notices of funding availability.

7. The May 8 Request identified the relevant sections of the Notices of Funding Availability by their section number and page number, as well as with quotations of the pertinent text. Both relevant sections referenced strategies to prevent the criminalization of homelessness. Regarding the 2015 notice, the May 8 Request requested responses concerning the following provision:

> *Outreach.* Up to 2 points to CoCs that demonstrate recipients have implemented specific strategies that prevent criminalization of homelessness, affirmatively further fair housing as detailed in 24 CFR 578.93(c), and ensure that outreach is conducted to homeless individuals and families who are least likely to request housing or services in the absence of special outreach. Maximum points will be awarded to CoCs that provide information that demonstrates that 100 percent of the geographic area is covered by the strategies and that describes the specific outreach procedures in place that are used by the homeless service organizations to identify and engage homeless individuals and families, including their efforts to provide meaningful outreach to persons with disabilities and persons with limited English proficiency. Applicants must describe how they are reducing criminalization of homelessness and the procedures they will use to market their housing and supportive services to eligible persons regardless of race, color, national origin, religion, sex, age, familial status, or disability who are least likely to apply in the absence of special outreach.

8. Regarding the 2016 notice, the May 8 Request requested responses concerning the following provision:

> *Criminalization*. Up to 2 points to CoCs that implemented specific strategies to prevent criminalization of homelessness within the CoC's geographic area. Maximum points will be awarded to CoCs that indicate specific strategies to ensure homelessness in [sic] not criminalized such as engaging or educating local policy makers, engaging or educating law enforcement, implementing community plans, or engaging or educating businesses.

9. In its May 8 Request, NLCHP also sought a full waiver of fees and explained in support that disclosure of the requested information would be in the public interest and not for commercial use. NLCHP stated, for example, that it would "analyze the data presented in the released documents to discover trends, valuable strategies, and possible areas of concern." It additionally asserted that such "knowledge will inform the work of advocates, educators, and litigators in

3

championing the rights of homeless and ending criminalization, in line with broader federal policy."

10. On June 22, 2017, when it had not received a response to the May 8 Request, NLCHP sent an email to William D. Smith, a representative of HUD's FOIA Branch, attaching a copy of the May 8 Request and seeking information on its status. Mr. Smith did not respond to the email.

11. On or about September 13, 2017, NLCHP mailed a letter to HUD's FOIA office requesting a response to the May 8 Request and noting that HUD had failed to provide a timely response.

12. On September 22, 2017, Mr. Smith emailed NLCHP and acknowledged the May 8 Request, including NLCHP's request for a fee waiver. The email informed NLCHP: "We can proceed processing your 5/8/17 request when you let me know via email to me, at your earliest convenience, whether or not you can reduce your 5/8/2017 request to enable a fee estimate you are willing to agree with, although you have requested a fee waiver."

13. By letter dated September 26, 2017, HUD acknowledged NLCHP's May 8 Request, but erroneously stated that the request was dated September 13, 2017. The letter also stated that the request was received in HUD's FOIA Branch on September 25, 2017, and that HUD had 20 working days within which to make a determination, absent unusual circumstances. The letter was silent on NLCHP's request for a fee waiver.

14. By letter dated October 2, 2017, HUD denied NLCHP's fee waiver request but stated that HUD is willing to provide documents to NLCHP electronically to avoid copy fees.

15. By letter sent on October 31, 2017, NLCHP appealed HUD's denial of its fee waiver request. NLCHP explained that HUD's denial failed to comply with the law because it did not state a specific reason for denying the fee waiver and applied the wrong legal standard. NLCHP

also explained why NLCHP was entitled to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and HUD's FOIA fee-waiver regulation, 24 C.F.R. § 15.106(k).

16. In support of its fee waiver request, NLCHP's appeal described, among other things, how NLCHP's request would satisfy the third of four factors in HUD's regulation for determining whether disclosure of records is in the public interest. That factor states that "[t]he disclosure should contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester" and further states that "[a] requester's expertise in the subject area and ability and intention to effectively convey information to the public will be considered." *Id.* § 15.106(k)(2)(iii). In support of this factor, NLCHP indicated, for example, that the organization "regularly creates reports on homelessness and poverty," that those reports "are widely covered in the media," and that NLCHP "also frequently publishes press releases and newsletters." NLCHP explained that its "monthly e-newsletter goes out to approximately 8,500 email addresses" and "its press releases go to approximately 1,000 reporters."

17. NLCHP's appeal further noted the organization's "intention to analyze the data presented in the released documents in an effort to inform the work of advocates, educators, and litigators" and specified that the analysis "will be included in a subsequent NLCHP report" and "will also help to inform various related webinars, including a NLCHP-sponsored webinar." NLCHP explained that its webinars regularly reach audiences of hundreds of advocates, city and county officials, and others, and that NLCHP also intended to work with the United States Interagency Council on Homelessness to publicize the information sought through the May 8 Request.

18. NLCHP's appeal letter also noted that a HUD website identifies NLCHP's website as a resource related to "Decriminalizing Homelessness."

19. NLCHP's appeal additionally explained that HUD should not be permitted to charge NLCHP fees in connection with the May 8 Request because the agency failed to comply with the statutory time limit for providing a response to that request. Once HUD failed to comply with the time limit, pursuant to 5 U.S.C. § 552(a)(4)(A)(viii)(I), the agency could no longer charge NLCHP search fees. Search fees are the only fees that otherwise could apply to the May 8 Request since NLCHP is not a commercial requester and HUD agreed to provide documents electronically. *See* 5 U.S.C. § 552(a)(4)(A)(ii).

20. By letter dated December 5, 2017, HUD affirmed its earlier denial of NLCHP's fee waiver request. In that letter, HUD stated that NLCHP's fee waiver request failed to meet only the third public interest factor. The letter concluded, "You are reliant on the activities of [United States Interagency Council on Homelessness] to enhance your capability to share the information with the public. Your independent ability to contribute to the understanding of the public is not sufficient to meet the fee waiver standard set forth in the third factor."

21. HUD's December 5, 2017 letter did not cite 5 U.S.C. § 552(a)(4)(A)(viii)(I), regarding the consequences of an agency failing to comply with a response deadline, but stated that "[t]here is no authority that requires the agency to waiver [sic] a fee or prohibit the collection of fees because of delay."

22. Under 5 U.S.C. § 552(a)(6)(A)(i), HUD had 20 working days to respond to NLCHP's May 8 FOIA request. More than 20 working days have passed since NLCHP's May 8 Request, and NLCHP has received neither a denial of that request nor any records produced in response to it.

23. NLCHP has exhausted all administrative remedies with respect to its May 8 Request and HUD's denial of the fee waiver for that request.

24. In a separate, November 2017 FOIA request to HUD, NLCHP sought a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii). By letter dated December 22, 2017, HUD granted NLCHP's November 2017 fee waiver request.

**FIRST CLAIM FOR RELIEF**
**(Denial of fee waiver request)**

25. Under 5 U.S.C. § 552(a)(4)(A)(iii), NLCHP is entitled to a full waiver of fees that otherwise would be assessed in connection with its May 8 Request, and HUD's denial of NLCHP's request for a public interest fee waiver violates FOIA.

26. In the alternative, under 5 U.S.C. § 552(a)(4)(A)(viii)(I), NLCHP is entitled to a waiver of search fees that otherwise would be assessed in connection with its May 8 Request, and HUD's denial of such waiver violates FOIA.

**SECOND CLAIM FOR RELIEF**
**(Denial of FOIA request)**

27. NLCHP has a statutory right under FOIA to the records it seeks, and HUD has no legal basis for its failure to produce those records.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

A. Declare unlawful HUD's failure to grant NLCHP's request for a public interest fee waiver;

B. In the alternative, declare unlawful HUD's failure to waive search fees related to NLCHP's request, pursuant to 5 U.S.C. § 552(a)(4)(A)(viii)(I);

C. Order HUD to make the requested records available to NLCHP without delay and at no cost;

D. Award NLCHP its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Grant such other and further relief as this Court may deem just and proper.

Dated: April 27, 2018

Respectfully submitted,

/s/ Rebecca Smullin

Eric S. Tars
National Law Center on
Homelessness & Poverty
2000 M Street NW, Suite 210
Washington, DC 20036
202-638-2535
ETars@nlchp.org

Rebecca Smullin (D.C. Bar No. 1017451)
Patrick D. Llewellyn (D.C. Bar No. 1033296)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202-588-1000
rsmullin@citizen.org

*Counsel for Plaintiff*